Joel E. Tasca (SBN 344697)
*tasca@ballardspahr.com*
Elliot G. Johnson (SBN 317303)
*johnsoneg@ballardspahr.com*
**Ballard Spahr LLP**
2029 Century Park East, Suite 1400
Los Angeles, CA  90067-2915
Telephone:  424.204.4400
Facsimile:  424.204.4350

Attorneys for Defendant
Great Basin Operating, LLC

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENAI MID-CONTINENT, INC., a California corporation<br><br>Plaintiff/Counter Claim Defendant,<br><br>v.<br><br>GREAT BASIN OPERATING, LLC, a Wyoming limited liability company, and DOES 1 through 10, inclusive,<br><br>Defendants / Counter Claim Plaintiff. | Case No. 1:24-cv-00434-CDB<br><br>**GREAT BASIN OPERATING, LLC'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS** |

Defendant / Counterclaim Plaintiff Great Basin Operating, LLC ("GBO"), by and through its undersigned counsel, hereby files its Answer and Affirmative Defenses to the Complaint of Plaintiff / Counterclaim Defendant Kenai Mid Continent ("Kenai"), and further states as follows:

## AS TO "COMMON ALLEGATIONS"

1.      GBO admits that Kenai is organized and existing under the laws of the State of California. GBO lacks sufficient information or knowledge to form a belief as to Kenai's licensing to do business in the State of Nevada, and as such, the allegations are denied.

2.      GBO admits that it is a limited liability company organized and existing under the laws of the State of Wyoming and is authorized to do business in the State of Nevada.

3.      The allegations of this paragraph pertain exclusively to entities or individuals other than GBO and therefore no response from GBO is required.

4.      GBO lacks sufficient information or knowledge to form a belief as to relationships relating to unnamed Doe defendants. Furthermore, GBO denies the allegations of this paragraph as conclusions of law to which no response is required.

5.      GBO admits that the parties entered into the International Association of Drilling Contractors Drilling Bid Proposal and Daywork Drilling Contract – U.S. (the "Contract"). GBO denies the remaining allegations set forth in this paragraph as conclusions of law to which no response is required.

## AS TO "FIRST CAUSE OF ACTION – BREACH OF WRITTEN CONTRACT"

6.      GBO incorporates by reference all responses to the above paragraphs of the Complaint as though fully stated herein.

7.      GBO admits the parties entered the Contract on or about August 15, 2023, for a well known as the North Diamond Valley 1-27 in Elko County, Nevada

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

(the "Well").

8.    GBO admits that paragraph 5.1 of the Contract provides that payment for mobilization, drilling, and other certain services are due upon presentation of an invoice subject to certain conditions as laid out in the remainder of the Contract.

9.    GBO denies that any outstanding balance remains due and owing for services provided under the Contract to Kenai.

10.    GBO denies that any outstanding balance remains due and owing for services provided under the Contract to Kenai.

11.    GBO denies that any outstanding balance remains due and owing for services provided under the Contract to Kenai.

12.    GBO denies that any outstanding balance remains due and owing for services provided under the Contract to Kenai.

13.    GBO denies that Kenai is owed $389,307.52 plus interest.    The remaining allegations of this paragraph constitute conclusions of law to which no response is required.

14.    GBO denies the allegations of this paragraph which constitute conclusions of law to which no response is required.

**AS TO "SECOND CAUSE OF ACTION – OPEN BOOK ACCOUNT"**

15.    GBO incorporates by reference all responses to the above paragraphs of the Complaint as though fully stated herein.

16.    GBO denies that any outstanding balance remains due and owing for services provided under the Contract to Kenai.

17.    GBO denies that any outstanding balance remains due and owing for services provided under the Contract to Kenai.

18.    GBO denies the allegations of this paragraph which constitute conclusions of law to which no response is required.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
Case No. 1:24-cv-00434-CDB

**AS TO "THIRD CAUSE OF ACTION – ACCOUNT STATED"**

19.    GBO incorporates by reference all responses to the above paragraphs of the Complaint as though fully stated herein.

20.    GBO denies that any outstanding balance remains due and owing for services provided under the Contract to Kenai.

21.    GBO denies that any outstanding balance remains due and owing for services provided under the Contract to Kenai.

**AS TO "FOURTH CAUSE OF ACTION – MONEY HAD AND RECEIVED"**

22.    GBO incorporates by reference all responses to the above paragraphs of the Complaint as though fully stated herein.

23.    GBO admits that it paid sums due under the Contract.  GBO denies that any outstanding balance remains due and owing for services provided under the Contract to Kenai.

**AS TO PRAYER "ON THE FIRST THROUGH FOURTH CAUSES OF ACTION"**

1.    GBO denies that Kenai is entitled to damages in the amount of $389,307.52.

2.    GBO denies that Kenai is entitled to interest.

**AS TO PRAYER "ON THE FIRST CAUSE OF ACTION ONLY"**

1.    GBO denies the allegations of this paragraph which constitute conclusions of law to which no response is required.  GBO further denies that Kenai is entitled to any relief.

**AS TO PRAYER "ON THE SECOND CAUSE OF ACTION ONLY"**

1.    GBO denies the allegations of this paragraph which constitute conclusions of law to which no response is required.  GBO further denies that Kenai is entitled to any relief.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

## **AS TO PRAYER "ON ALL CAUSES OF ACTION"**

1.     GBO denies the allegations of this paragraph which constitute conclusions of law to which no response is required.  GBO further denies that Kenai is entitled to any relief.

2.     GBO denies the allegations of this paragraph which constitute conclusions of law to which no response is required.  GBO further denies that Kenai is entitled to any relief.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

4

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Case No. 1:24-cv-00434-CDB

# AFFIRMATIVE DEFENSES

## FIRST AFFIRMATIVE DEFENSE

Kenai fails to state any claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Kenai's claims are barred, in whole or in part, by the doctrine of release and/or waiver.

## THIRD AFFIRMATIVE DEFENSE

Kenai is barred from relief because Kenai breached the Contract by failing to fully perform its obligations under the Contract.

## FOURTH AFFIRMATIVE DEFENSE

Kenai is not entitled to relief as a result of damages caused to GBO by Kenai's negligent failure to adequately complete its duties under the Contract.

## FIFTH AFFIRMATIVE DEFENSE

To the extent Kenai is entitled to any damages against GBO, GBO is entitled to offset as a result of Kenai's negligence and failure to perform its duties under the Contract.

## SIXTH AFFIRMATIVE DEFENSE

Kenai is barred from relief against GBO inasmuch as any alleged harm suffered by Kenai was not caused in fact or proximately caused by any act or omission of GBO.

## SEVENTH AFFIRMATIVE DEFENSE

To the extent that Kenai has suffered any damages as a result of the matters alleged in the Complaint, Kenai failed to mitigate its damages, if any.

## EIGHTH AFFIRMATIVE DEFENSE

Any and all damages sustained by Kenai are the direct result of its own actions or omissions or the acts or omissions of unrelated third parties over which GBO has no control.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

1

**NINTH AFFIRMATIVE DEFENSE**

Kenai's claims are barred, in whole or in part, by the doctrines of unclean hands, estoppel, laches, acquiescence, and other doctrines of equitable relief. Among other things, Kenai has misstated its billing invoices and is barred from collecting such amounts.

**TENTH AFFIRMATIVE DEFENSE**

GBO has not violated any duty or obligation owed to Kenai under common law, statute, any applicable contract, or other authority.

**ELEVENTH AFFIRMATIVE DEFENSE**

Kenai's claims are barred, in whole or in part, by the applicable statute of limitations.

**TWELFTH AFFIRMATIVE DEFENSE**

To the extent that Kenai is entitled to any damages against GBO, those damages are too indefinite because Kenai has misstated its fees and time spent working under the Contract.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Kenai is barred from claiming any relief because GBO has already tendered the balance due under the Contract.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Kenai is barred from relief because it would be unjustly enriched from recovering damages in excess of the actual amount due under the Contract.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Kenai is barred from any damages because GBO substantially complied with the Contract.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Kenai is barred from any damages because it failed to perform conditions precedent under the Contract.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067–2915
Telephone: 424.204.4400

6

1

## SEVENTEENTH AFFIRMATIVE DEFENSE

2      GBO reserves the right to assert additional defenses at such time and to such

3  extent as warranted by discovery and the factual developments of this case.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
Case No. 1:24-cv-00434-CDB

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

# COUNTERCLAIMS

Defendant / Counterclaim Plaintiff Great Basin Operating, LLC ("GBO"), by and through its counsel, alleges the following against Kenai Mid-Continent, Inc. ("Kenai") as follows:

# NATURE OF ACTION

1.      These are civil counterclaims brought by GBO against Kenai relating to the drilling of an oil well in Nevada.  Kenai repeatedly failed to perform its duties under the contract and the relevant standard of care.  Specifically:

    a. Kenai was grossly negligent because it failed to properly assemble, maintain, or operate its oil drilling rig.  Additionally, Kenai failed to keep accurate billing records for the work performed.

    b. Kenai breached its contractual obligations to GBO by failing to follow GBO's directions on well operations and invoicing GBO for overstated charges not agreed upon by GBO.

    c. Kenai committed fraud and/or negligent misrepresentation by misstating the operational capacity of their drilling rig, specifically the premium designation of the drill pipe, and deliberately overstating charges such as the amount invoiced by a subcontractor to collect improper sums from GBO.

2.      As a result, Kenai is liable to GBO for millions of dollars in damages as discussed *infra*.

# PARTIES

3.      Kenai is a California Corporation with its principal place of business located at 6430 Cat Canyon Road, Santa Maria, CA 93454.  Therefore, Kenai is a citizen of California.

4.      GBO is a limited liability company organized under the laws of the State of Wyoming, and its sole member, John P. Ellbogen II, is a citizen of the State of

8

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Case No. 1:24-cv-00434-CDB

Wyoming.  Accordingly, GBO is a citizen of Wyoming.

## JURISDICTION

5.    Complete diversity exists under 28 U.S.C. § 1332, and the damages sought in this case are well in excess of $75,000, exclusive of interests and costs.

6.    The Counterclaim arises out of the same transaction and events that are the subject matter of Kenai's Complaint and does not require adding another party over whom the court cannot acquire jurisdiction.

7.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and because the Superior Court of Kern County is located within this District. Additionally, the contract at issue in this litigation includes a venue selection clause that federal courts in the County of Kern will have jurisdiction.

## FACTUAL BACKGROUND

8.    GBO requested bids for a contractor to provide and operate an oil drilling rig and equipment ("Rig") to drill a well known as the North Diamond Valley 1-27 in Elko County, Nevada (the "Well") to 13,000 to 14,000 feet, unless GBO and Kenai mutually agreed to a greater depth.

### GBO Engages Kenai to Drill a Well

9.    On or around August 14, 2023, Kenai submitted the following bid to drill the Well (the "Bid"):

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

9

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

**Great Basin Operating, LLC.**
**North Diamond Valley Re-Drill Project**

| KENAI RIG 17 | | |
|---|---|---|
| **Mobilization and Rig Up - Kenai labor only - Daily** | $ | 16,400.00 |
| The mobilization rate is for Kenai labor to move in Kenai equipment.  Prorated based on release and acceptance. | | |
| **Mobilization and Rig Up - Third Party Trucks and Cranes** | As incurred | |
| The mobilization rate for trucks and cranes from Bakersfield to move in Kenai equipment to North Diamond Valley, Nevada, is estimated to be: | $ | 262,000.00 |
| **Operating Rate with Company-Provided Fuel- Daily** | $ | 20,500.00 |
| The operating rate is per twenty-four (24) hour day beginning when rig completes initial mobilization and continuing during the term of this Contract, including time spent drilling, reaming, coring, drill stem testing, picking up drill pipe, tripping, circulating and conditioning mud, running and cementing casing, waiting on cement, logging, performing routine maintenance, waiting on orders, nippling up, completing and testing the well. This rate includes a (5) man rig crew and (1) Rig Manager. | | |
| **Standby with Crew Rate- Daily** | $ | 16,400.00 |
| The standby rate is applicable when at Customers request, operations are shut down and Kenai crews are not released. | | |
| **Demobilization and Rig Down - Kenai labor only - Daily** | $ | 16,400.00 |
| The demobilization rate for Kenai labor to move out Kenai equipment back to Bakersfield, day rate. Prorated based on release and acceptance. | | |
| **Demobilization and Rig Down - Third Party Trucks and Cranes** | As incurred | |
| The demobilization rate for trucks and cranes to move Kenai equipment from North Diamond Valley, Nevada to Bakersfield, is estimated to be: | $ | 262,000.00 |
| **2nd Rig Manager, if requested.** | $ 2000 per day | |
| **Safety Captain, if requested.** | $ 1400 per day | |
| **Daily Per Diem** (if work is greater than 50 miles from Bakersfield CA, per diem is $ 200 per day/per man) | $ 200 per day/per man | |
| **Daily Per Diem if man camp provided by Operator** (if work is greater than 50 miles from Bakersfield CA, per diem is $ 100.00 per day/per man) | $ 100 per day/per man | |
| **Drill Pipe and Collars - As negotiated** | Included | |
| **8,000# Forklift** | Included | |
| **Drill Pipe Inspections and Repairs plus Transportation of Downgraded Drill Pipe** | As incurred | |

10.    GBO accepted Kenai's Bid, which was incorporated by reference into an International Association of Drilling Contractors Drilling Bid Proposal and Daywork Drilling Contract (the "Contract").  The Parties signed the Contract on August 15, 2023.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

## Kenai Overcharges for Trucking to the Well

11.     Before Kenai could commence operations, it needed to have subcontractor TNT Truck and Crane Service ("TNT") transport the Rig to the Well. The Bid provides that GBO would pay up to $262,000.00 for trucking to the well. Section 4.1 of the Contract provides that Transportation would be billed by Kenai to GBO as invoiced by TNT – meaning Kenai would invoice GBO only for the amount Kenai actually paid TNT, up to $262,000.00.

12.     Kenai later sent GBO an invoice for trucking dated September 14, 2023. Kenai claimed $276,508.14 was paid to TNT which exceeded the $262,000.00 amount provided in the Bid.  In addition, GBO is informed and believes that, in contravention of Section 4.1 of the Contract, the $276,508.14 amount charged by Kenai exceeded the amount TNT actually invoiced Kenai.  Kenai also added a spurious 10% handling fee on top of the already inflated charges – for a total of $304,158.95.  Nothing in the Contract allows Kenai to charge an additional handling fee for Trucking.  It also makes no sense why Kenai would add a handling fee when it did not even handle the trucking – TNT did.[1]  GBO timely disputed the invoice, but Kenai, without GBO's consent, drew amounts from GBO's prepaid funds for these charges.

## Kenai Fails to Timely Mobilize the Rig

13.     Section 2 of the Contract provides Kenai would begin operations at the Well by August 21, 2023.

14.     TNT started trucking the Rig on or about August 15, 2023.  By August 24, 2023, around 80% of the Rig was onsite.  Kenai's workers arrived that same day and already had all of the necessary equipment and materials to start mobilizing the Rig.  GBO accepted August 24, 2023 as the commencement date since that is when

---

[1]     Kenai was already paid a separate rate for mobilizing the equipment of $16,400.00 per day.

Kenai's employees arrived, even though Section 2 of the Contract said it would begin on August 21, 2023.

15.    On August 25, 2023, Kenai's workers continued assembling the Rig. Normally, it would only take 2-3 days to assemble a rig in a similar situation, but GBO's operation's supervisor noticed assembly was moving very slowly. Rather than working, nearly all of Kenai's employees were sitting around using their cellphones. When GBO asked Kenai's crew to get back to work, they sneered, and then went back to their phones.

16.    In order for operations to proceed, GBO had to hire additional vendors to work at the site of the Well. Before seeing how slow and poorly Kenai conducted its work, GBO anticipated the Rig would be fully mobilized and ready to begin testing by August 28, 2023. That estimation was based on GBO's team's extensive experience drilling wells and section 4.1 of the Contract that Kenai would have the Rig mobilized in no more than 5 days or it would not be paid for any additional mobilization time.

17.    GBO hired a geologist, a directional drilling company, a company to manage drilling fluids, a company that provides living trailers for everyone on site, and heavy equipment rentals such as forklifts (the "Vendors"). All of the Vendors started working at the Well on August 28, 2023 at a cumulative day rate of $12,600.00. However, Kenai did not have the Rig mobilized and ready to begin testing until 3:00 a.m. on September 1, 2023. Therefore, Kenai failed to timely mobilize the Rig as provided in section 4.1 of the Contract. As a result, GBO had to pay the Vendors $50,400.00 to sit around and wait for Kenai.

18.    Kenai served an invoice dated September 14, 2023 which inaccurately reflected Kenai's mobilization of the Rig. The invoice provided that Kenai began mobilizing the Rig on August 26, 2023, when it actually began mobilizing on August 24, 2023. GBO is informed and believes that Kenai misstated the start date to avoid

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

12

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Case No. 1:24-cv-00434-CDB

blame for its slow work and Vendor expense.

Issues Arise from Kenai's Failure to Properly Assemble the Rig

19.    After Kenai finished mobilizing the Rig, it began performing tests to ensure the Rig was operating correctly.  During the tests, numerous hoses along with pumps, and the Rig's blow-out-preventer started leaking and failing.  These are all critical and highly unusual errors in the oil well drilling industry.  In the 8 days that Kenai had spent trying to assemble the Rig, they failed to assemble it correctly.  Had Kenai exercised even minimal care, they could have easily assembled the Rig in the 8 days they spent – which is 4 times longer than it would normally take a contractor.

Kenai's Rig was in Significant Disrepair

20.    GBO is informed and believes that Kenai concealed the fact that the Rig was repurposed after multiple improper uses/assemblies and nowhere near up to code.  Kenai represented and provided reports that the Rig was in good shape for the operation.  But, after taking a closer look, GBO found that all of the reports were expired and over 6 months old.  Based on the actual condition of the Rig, Kenai likely used it for numerous wells since the reports provided were taken.  New reports should have been taken after each use, but if they were, Kenai hid them from GBO in order to acquire the Bid.

21.    Additionally, key reports, such as the tensile strength of the drill pipes, were missing.  The drill pipe should have had a premium class designation (meaning 80% of the tube's original wall thickness was remaining).  Kenai advised GBO that the drill pipe had a premium class designation, but in fact, it was far below.  Therefore, even if the Rig was properly assembled, which it was not, the equipment itself was completely inadequate and unsafe to be used on the Well.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

### The Poor Condition of the Rig Leads to Excessive Repair Time

22.     The Rig had so many issues that there was no option but to pull the drill pipe from the Well and basically overhaul the Rig.  Section 4.4 of the Contract provides that GBO would pay Kenai the standard operating rate for up to 8 hours for a single repair, but not to exceed 16 hours in a month.  Kenai spent the next 21 hours trying to fix their mistakes and the inoperable Rig.  Kenai exceeded the 8 hours allowed under section 4.4 of the Contract.  However, the September 14, 2023 invoice charged GBO for the whole day when it should have been reduced by 13 hours.  This also meant another day was wasted while GBO paid the Vendors.

### Kenai Drives the Drill Directly Into a Deviation Tool and Concrete Block

23.     Before testing the Well concluded, GBO advised Kenai's team that there was a deviation tool, also called a DV tool, which consisted of cement, a rubber plug, and a cast-iron plug (collectively known as, the "Deviation Tool") set at approximately 7,600 feet down the Well.[2]  Kenai was instructed that they needed to stop approximately 150 feet short of the Deviation Tool to avoid a collision and damage to the drill pipe and Bottom Hole Assembly ("BHA").  GBO had provided Kenai with both verbal instructions and a printed diagram to show what they needed to do and where the Deviation Tool was located.

24.     On September 3, 2023, Kenai began lowering the drill pipe and BHA down the Well.  Around 10:30 a.m., Kenai completely ignored GBO's instructions and at a significant rate of speed, rammed the drill bit directly into the Deviation Tool without circulating the bit.  GBO is informed and believes that Kenai's Rig operator/Driller believed he could make up for lost time by blasting through the Deviation Tool instead of doing as GBO had instructed.  Even if trying to drill through

---

[2]     The Deviation Tool was left after GBO began drilling the Well in November of 2022.  The work was temporarily stayed to preserve a pronghorn grazing area.

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

the Deviation Tool was a feasible plan, the Rig should have been pumping mud and circulating the bit in order to avoid damaging or destroying the drill pipe and BHA (collectively known as "the Drill String").  Had Kenai's workers exercised any care or professionalism, they would have known that the Drill String should not be used as a battering ram.

25.    After crashing the Rig's Drill String into the Deviation Tool, the Rig immediately stopped working and was stuck in the Well.  Kenai's workers immediately admitted to GBO that they made a huge mistake.

<u>Kenai's Misconduct Creates the Need for Additional Repairs</u>

26.    Only 30 minutes after crashing the Rig, its state of disrepair caused another leak approximately 60 feet above the rig floor.  At that same time, a thunderstorm was hitting the area.  GBO believes that Kenai hoped to hide the seemingly unending issues from GBO and to stop the constant delays.  GBO's operational supervisor came to see that one of Kenai's employees was suspended from a rope over 60 feet above the rig floor, on the metal structure, with a metal hammer, trying to fix the leak while lightning was striking all around the area.  GBO was shocked by Kenai's disregard for any safety practices and its blatant disregard for human life.  GBO's operational supervisor forced Kenai's worker to come down until the storm had ended for everyone's safety.

27.    After the storm passed, Kenai continued working on its repairs.  The drill bit was still jammed and would not work without the Rig's pump which was leaking and inoperable.  These repairs took another 24.5 hours.  Kenai was already far past the amount of compensable repair time under the Contract.  In order to continue billing GBO, Kenai mischaracterized these repairs as ordinary maintenance rather than repairs.  Kenai again drew funds from GBO's prepaid funds without its consent.  This of course meant another day of GBO paying the Vendors to wait for Kenai's endless issues.

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

28. On September 5, 2023, the under-maintained/serviced Rig again had another issue. The machine that unscrews the drill pipe stopped working. Pulling the pipe from the Well would normally take about an hour or an hour and a half at most. Since the Rig was in disrepair, GBO and Kenai had to manually pull the pipe out of the Well, which took 10 hours.

29. On September 7, 2023, a gasket in a Rig pipe blew out at the pipe connection and began spraying out drilling fluid. Separately, but that same day, dies in the Rig's tongs malfunctioned and also needed to be repaired. These repairs cumulatively meant another 3 hours of repairs. Again, these repairs were mischaracterized as ordinary maintenance and billed to GBO.

30. On September 10, 2023, a hydraulic hose on the Rig malfunctioned, which meant more time spent on repairs. Again, these repairs were mischaracterized and erroneously drawn from GBO's funds.

31. On September 14, 2023, the Rig's top drive stopped rotating and a considerable amount of time was spent troubleshooting the problem. Separately, Well's hole started taking on fluid. In response GBO instructed Kenai to slowly administer Lost Circulation Material ("LCM") into the Rig's mud pump in order to circulate and plug the leak. Rather than following GBO's instructions, Kenai dumped all of its LCM into the mud pump at once. As anyone familiar and knowledgeable with an oil drilling rig would know, this immediately caused the pump to get plugged. Kenai had to pull the pipe out of the hole, and astoundingly, another hydraulic hose broke. Kenai's poorly maintained and underserviced equipment apparently had yet another leak. These additional issues resulted in more than 39 hours of additional repairs to get the drilling back underway. Kenai again mischaracterized and understated these issues to overcharge GBO. This also meant another two days of paying the Vendors to sit and wait for Kenai's mishaps to end.

32. On September 15, 2023, Kenai finally got the drill bit unplugged, but

16

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

another mud motor and Measurement While Drilling probe ("MWD Probe") blew out, and as a result of Kenai's carelessness, GBO paid $23,950.00 to replace the motor and MWD Probe. Next, the Rig's communication relay stopped working and also needed to be repaired.

33.    At this point, surely everything that could have gone wrong already did.

Kenai's Misconduct Finally Leads to the Entire Well's Catastrophic Failure.

34.    On September 18, 2023, Kenai reached the full length of the drill pipe. Kenai needed more drilling pipe and had to wait for more to be delivered. While waiting on more pipe, GBO instructed Kenai to keep pumping mud and gently running the drill so it would not get stuck. Without GBO's approval, Kenai's Rig operator/Driller started to pull up on the Drill String – for no apparent reason. Kenai's operator/Driller carelessly pulled on the Drill String to such an extreme that it exceeded the tensile strength of the drill pipe which, as explained above, was much lower than the premium grade that Kenai represented. As a result, this action caused the drill pipe to part into pieces. The drill pipe broke near the surface at approximately 13,000 feet of the Drill String dropped down Well's hole. When the Drill String went down the hole, it smashed and corkscrewed into the earth. The Drill String was lodged at an unrecoverable spot at the bottom of the hole.

35.    In order to try and remove the corkscrewed and smashed Drill String, GBO spent $545,778.00. However, it was impossible to remove the entirety of the drill string from the hole. Due to the extent of the lodged pipe, GBO had to sheer off the drill string at approximately 10,400 feet; losing approximately 4,000 feet of drill string making it impossible to continue drilling. Ultimately continuing became cost prohibitive and the Well was lost.

Kenai's Charges GBO for New Pipe and Overstates the Price

36.    Under the Contract, GBO agreed to cover the cost of lost in-hole equipment. Kenai requested $342,620.00 from GBO for a brand new replacement of

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

17

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

the portion of the drill pipe that dropped down the Well. These costs should have, and would have, been entirely avoided if Kenai had performed its duties with any care. And, Kenai used this as an opportunity to improperly overcharge GBO a 10% handling fee for the purchase of the new drill pipe.

37.    Section 4.8 of the Contract provides GBO would reimburse Kenai a 10% handling fee for equipment that is to be provided by GBO under the Contract, but is instead provided by Kenai for convenience. Nothing in the Contract allows Kenai to charge an extra 10% for purchasing brand new drill pipe, which was not even brought to the Well. In total Kenai charged, and GBO paid, $376,882.00[3].

#### Kenai Overbills GBO for Removal of the Rig from the Well.

38.    Next, Kenai needed to demobilize the Rig. TNT charged $277,852.00 for trucking to remove the Rig. Under section 4.1 of the Contract, that is the amount that GBO would be required to pay. Kenai was not aware that the invoice for the demobilization trucking had been provided to GBO (i.e. GBO was made aware of how much should actually be charged by Kenai). Kenai again used this as an opportunity to misrepresent the amount GBO owed, and Kenai sent GBO a bill dated October 13, 2023, for $338,127.00 for TNT's trucking.  On top of that, Kenai again added another erroneous 10% charge for handling not permitted under the Contract. In just this one bill, GBO discovered that Kenai was trying to overcharge it $94,087.70. GBO is informed that Kenai's overbilling was a pervasive issue that was largely concealed by Kenai.

### FIRST COUNTERCLAIM
#### (Negligence Against Kenai)

39.    GBO realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

---

[3]    This figure includes the $342,620.00 for the new drill pipe in addition to the erroneous 10% handling fee.

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

40.    To the extent that Kenai's actions were not intentional, Kenai was grossly negligent, and the Contract does not waive any such claims.

41.    As an oil drilling contractor, Kenai had a duty to exercise the skill and knowledge normally possessed by members of that trade under similar circumstances and at the same time and in the same locality.  Kenai's work was far below the relevant standard of care and resulted in substantial damages:

    a.  <u>Kenai failed to sufficiently test the state of the Rig for the Well operations, and it failed to properly assemble, repair, and maintain the Rig</u>.  As a result, GBO had to pay Vendors for days while the project took excessively long from slow work and constant repairs.

    b.  <u>Kenai failed to properly operate the Rig</u>.  Kenai rammed the Drill String directly into the Deviation Tool even though Kenai's driller was aware of its location and how to avoid such a catastrophic incident.  This resulted in additional repairs and downtime, all paid for by GBO.  Kenai improperly administered LCM into the Rig's mud pump which caused lost time and additional repairs.  Again, at GBO's expense.  Kenai also caused the drill pipe to part by over-leveraging the tensile strength of the drill pipe.  This resulted in damage to the Rig and the loss of the Well.  GBO paid $545,778.00 to try and retrieve drill pipe from the Well. GBO paid an additional $342,620.00 to replace the drill pipe and BHA, as well as millions of lost profits from the Well's operation.  Additionally, all of the money GBO had paid trying to drill the well was now a total loss.

    c.  <u>Lastly, Kenai failed to keep accurate records or provide accurate invoices</u>.  As a result, Kenai misappropriated funds from GBO based on inaccurate invoices.

42.    GBO hoped to walk away from this nightmare, but Kenai has not made

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

19

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Case No. 1:24-cv-00434-CDB

that an option by filing suit.  As a result, GBO has incurred attorney's fees which are recoverable under the Contract.

43.     Wherefore, GBO prays for relief as set forth below.

## SECOND COUNTERCLAIM
### (Breach of Contract Against Kenai)

44.     GBO realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

45.     The parties entered the Contract and Bid, and GBO performed all of its obligations, even after numerous material breaches by Kenai.

46.     Page 1 of the Contract provides that Kenai would follow "direction, supervision and control" of GBO for "the drilling and all other well operations." However, Kenai failed to comply with GBO's instruction which resulted in:

a. <u>Delays in beginning the project</u>.  GBO asked Kenai to focus on assembling the Rig but they refused to get off their cellular telephones which caused significant delays and costs to GBO for Vendors.

b. <u>Kenai ramming the Drill String into the Deviation Tool</u>.  GBO provided a diagram and specifically instructed how Kenai needed to circulate and drill-out the Deviation Tool.  Kenai ignored GBO's instruction and tried to blast through the Deviation Tool.  This caused damage to the Rig, Drill String, and required additional downtime for repairs, paid for by GBO.

c. <u>Kenai destroying the Drill String and Losing the Well</u>.  GBO instructed Kenai to keep the Drill String gently running while waiting for more drill pipe to arrive.  Kenai refused to follow these instructions and instead tried to navigate the drill pipe so hard that it parted and fell down the Well.

47.     Section 4.1 of the Contract provides that trucking costs for the Rig would

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

be billed to GBO as invoiced by TNT.  Kenai breached this provision by overstating the amounts invoiced by TNT for trucking both to and from the Well location. Therefore, Kenai passed on inflated charges onto GBO to acquire money not owed under the Contract.  As an example, the invoice for return trucking was overstated by $94,087.70.

48.    Section 8.4 of the Contract provides that Kenai would keep and furnish accurate records of services performed.  Kenai breached this duty by providing invoices that misstated the work Kenai performed.  For instance, the September 14, 2023, invoice provided by Kenai suggested Kenai began assembling the Rig on August 26, 2023, when it actually began assembling on August 24, 2023.

49.    Kenai's inaccurate invoices also pervasively failed to account for Kenai's approximate 90 hours of repairs that exceeded the maximum limit of 16 hours.  Under section 4.4 of the Contract, none of that time should have been billed to GBO, but was still predominately billed to GBO at Kenai's standard operating rates.

50.    Section 4.8 of the Contract provides that a handling fee may be charged when Kenai provides equipment that was supposed to be provided by GBO. However, Kenai misapplied this provision and repeatedly charged GBO a 10% handling fee when not applicable.  Kenai charged the improper handling fee for trucking the Rig both to and from the Well,[4] and for purchasing new drill pipe after Kenai had destroyed their own.  GBO did not even have an opportunity to prevent these charges because Kenai repeatedly pulled improper withdrawals from GBO's prepaid funds.

51.    Kenai willfully and intentionally breached the Contract and caused

---

[4]    The Contract does not provide that the Rig is supposed by provided by GBO. Instead, the Rig is referred to as "Contractor's Rig" in nearly every paragraph. Therefore, section 4.8 is completely inapplicable to trucking the Rig.

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

substantial actual and consequential damages to GBO.

52.     GBO is also entitled to an award of attorney's fees and costs under the Contract.

53.     Wherefore, GBO prays for relief as set forth below.

### THIRD COUNTERCLAIM
**(Negligent Misrepresentation Against Kenai)**

54.     GBO realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

55.     Kenai made grossly negligent and false statements as to their ability to perform the work provided in the Contract; the quality and sufficiency of the Rig and all of their equipment, which was actually in material disrepair; the time Kenai worked; and the amounts GBO supposedly owed to Kenai in Kenai's invoices.

56.     Kenai knew, or should have known that each of the above representations were false.

57.     Kenai's misrepresentations induced GBO to enter the Contract, rely on Kenai to drill the Well, and pay Kenai based on its misstated bills.

58.     As a result of Kenai's misrepresentations, GBO suffered millions of dollars in damages as a direct result of Kenai's negligent misrepresentations.

59.     Kenai's actions were willful, knowing, fraudulent, oppressive, and malicious.  As a result, GBO is entitled to punitive damages against Kenai.

### FOURTH COUNTERCLAIM
**(Fraud Against Kenai)**

60.     GBO realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

61.     Kenai knowingly made false statements as to their ability to perform the work provided in the Contract; the quality and sufficiency of the Rig and all of their equipment, which was actually in material disrepair; the time Kenai worked and under

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

which category of the Contract; and the amounts GBO supposedly owed to Kenai.

62.     Kenai knew that each of the above representations were false.

63.     As a result of Kenai's misrepresentations, GBO was induced to enter the Contract with Kenai, rely on Kenai to drill the Well, and pay Kenai based on its misstated bills.

64.     GBO suffered millions of dollars in damages as a direct result of Kenai's fraud.

65.     Kenai's actions were willful, knowing, fraudulent, oppressive, and malicious.  As a result, GBO is entitled to punitive damages against Kenai.

## FIFTH COUNTERCLAIM
### (Accounting Against Kenai)

66.     GBO realleges and incorporates by reference as though fully set forth herein each and every allegation contained in the preceding paragraphs.

67.     Kenai has misstated bills to GBO and improperly drawn from GBO's prepaid funds.

68.     GBO requires an accounting of Kenai's records in order to determine how much money Kenai owes GBO.

## PRAYER FOR RELIEF

WHEREFORE, Defendant GBO denies any liability whatsoever, denies that Kenai is entitled to any damages, costs, fees or other relief from or against GBO, and demands judgment in its favor and against Kenai,

GBO further prays for relief as follows:

(1) An award of actual damages,

(2) An award of general damages,

(3) An award of consequential damages,

(4) An accounting of Kenai's records,

(5) An award of punitive damages,

(6)  An award of reasonable attorney's fees,

(7)  Prejudgment interest at the maximum legal rate, and

(8)  Any other and further relief as this Court shall deem just and proper.

DATED: May 13, 2024                    BALLARD SPAHR LLP

                                       BY:  */s/ Elliot G. Johnson*
                                            Elliot G. Johnson

                                       Attorneys for Defendant
                                       Great Basin Operating, LLC

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400

24
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
Case No. 1:24-cv-00434-CDB

## CERTIFICATE OF SERVICE

I hereby certify that on this thirteenth day of May, 2024, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Elliot G. Johnson*
Elliot G. Johnson

| | |
|---|---|
| CLIFFORD AND BROWN<br>Grover H. Waldon<br>gwaldon@clifford-brownlaw.com<br>Jacob Thomasy<br>jthomasy@clifford-brownlaw.com<br>James R. Harvey<br>jharvey@clifford-brownlaw.com,<br>cherrijo@bbr.law<br>Bank of America Building<br>1430 Truxtum Avenue, Suite 900<br>Bakersfield, CA 93301-5230<br>Tel: 661.322.6023 | *Attorneys for Plaintiff, Shirley Neer* |

25

ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Case No. 1:24-cv-00434-CDB

Ballard Spahr LLP
2029 Century Park East, Suite 1400
Los Angeles, California 90067-2915
Telephone: 424.204.4400